UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN CUMMINGS,<br>    *Plaintiff*,<br><br>v.<br><br>CITY OF BRIDGEPORT, ERIC AMADO,<br>REBECCA GARCIA,[1] CIVIL SERVICE<br>COMMISSION OF THE CITY OF<br>BRIDGEPORT<br>    *Defendants*. | 3:20-CV-00647 (SVN)<br><br><br><br><br>May 27, 2022 |

**DECISION AND ORDER ON THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT**

Sarala V. Nagala, United States District Judge.

In this action brought under 42 U.S.C. § 1983, Plaintiff John Cummings has alleged that the City of Bridgeport, the former Bridgeport Personnel Director, the former Bridgeport Chief of Police, and the Civil Service Commission of the City of Bridgeport (the "Commission" and collectively "Defendants") wrongfully denied Plaintiff a promotion to the rank of Captain in the Bridgeport Police Department without due process of law, in violation of his Fourteenth Amendment rights.

Currently pending before the Court are the parties' cross motions for summary judgment. The parties agree on the relevant facts but disagree primarily on whether Plaintiff had a cognizable property interest in the promotion that would have entitled him to due process before he could be denied the promotion. Specifically, Plaintiff argues that he was the next candidate on the eligibility list to be promoted to the rank of Captain and that, upon being certified by the Bridgeport Personnel

---

[1] David Dunn, the City of Bridgeport's former Personnel Director, and A.J. Perez, Bridgeport's former chief of police, who were originally defendants sued in their official capacities in this action, no longer hold these offices. Pursuant to Federal Rule of Civil Procedure 25(d), the Court automatically substitutes Eric Amado, Bridgeport's current Personnel Director, and Rebecca Garcia, Bridgeport's acting chief of police, as Defendants.

Director (the "Personnel Director"), Defendants had no choice but to promote him. Defendants, on the other hand, contend that, under the plain language of the Bridgeport City Charter, the eligibility list had already expired at the time the Personnel Director certified Plaintiff for promotion. Accordingly, Defendants argue, Plaintiff had no property interest in the promotion as a threshold matter and, thus, there could be no due process violation.

For the reasons set forth below, the Court agrees with Defendants and finds that the eligibility list had expired prior to Plaintiff's name being certified for promotion. Thus, Defendants' Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Summary Judgment is DENIED.

## I. FACTUAL BACKGROUND

The facts of the present case are fairly straightforward and mostly undisputed. However, before one can appreciate these facts, one must understand how the City of Bridgeport promotes police officers. Under the Charter of the City of Bridgeport (the "Charter"), police officers are considered part of the "classified service." Charter § 205(a). Specifically, police officers are part of the "competitive" division of the classified service. *Id.* § 205.1.

It is the responsibility of the City's personnel director to "provide for, formulate and hold competitive tests to determine the relative qualifications of persons who seek employment or promotion" within the competitive division of the classified service. *Id.* § 207(6); *see also id.* § 211(a). Such tests are public and open to all who "have held a position for one year or more in a class or rank previously declared by the [civil service] commission to involve the performance of duties" that make the applicant appropriate for the promotion. *Id.* § 211(a). The results of these tests must then be used to create an "employment list" containing individuals eligible for the

sought-after promotion. *Id.* This employment list[2] shall contain a list of all eligible entrants, in order of their performance on the promotional exam. *Id.*

The employment list must be posted "as soon as possible" after the marking of all of the tests and "not later than ninety days from the date of the test." *Id.* The Charter sets forth an appeal period of "one month after posting the eligible list," during which any error in marking the test, if called to the attention of the Commission, "shall be corrected." *Id.* During that one-month period, "[n]o certification of appointment shall be made." *Id.* Additionally, and importantly for the present case, the Charter provides that "the commission *shall* cancel any portion of any list as has been in force for more than two years." *Id.* (emphasis added).

When a position for which there exists an employment list becomes vacant, a number of steps are mandated under the Charter. First, the "appointing authority" *shall* notify the personnel director whether or not it desires to fill the vacancy. *Id.* § 213(a). For the police department, the police chief is the appointing authority. *Id.* ch. 13 § 5. If the police chief wants to fill the vacancy, he or she *shall* request the name of the next eligible candidate to fill the spot. *Id.* § 213(a). Upon receiving this request, the Personnel Director *shall* determine if in fact a vacancy does exist and report his findings to the Commission. *Id.* If the Commission determines a vacancy does exist, it *shall* order the Personnel Director to certify the name of the next eligible person on the employment list to fill the vacancy. *Id.* At this point, the Personnel Director may refuse to certify the name of the next person on the list only for certain specific reasons amounting to good cause, found at section 212 of the Charter. *Id.* § 212. If the Personnel Director certifies a name, the police chief *shall* forthwith appoint that person to the position. *Id.* § 213(a).

---

[2] The Court refers to this list interchangeably as the "employment list," the "eligibility list," and the "promotion list."

In the action presently before the Court, the parties do not dispute the following facts. Plaintiff is a Lieutenant in the Bridgeport Police Department. Pls.' L.R. 56(a)1 St., ECF No. 28, ¶ 6. On October 21, 2015, the City of Bridgeport held an examination to create an employment list of individuals who would be qualified for promotion from Lieutenant to Captain. *Id.* ¶ 11. Plaintiff took that examination. Based on the results of the examination, on October 30, 2015, the Personnel Director created and posted a list of all eligible candidates for promotion to Captain, ranked in order of their scores on the promotional examination. *Id.* ¶ 13; ECF No. 29-5. On December 8, 2015, the Civil Service Commission for the City of Bridgeport certified this list. ECF No. 28 ¶ 12. Plaintiff ranked tenth on this list. *Id.* ¶ 13. The first four promotions from the list were made on January 14, 2016. *Id.* ¶ 14; ECF No. 29-5. Between that time and January 12, 2018, various people were either promoted or removed from the list such that Plaintiff had moved from tenth in line for promotion to second in line.

On January 12, 2018, apparently after being alerted to the possible expiration of the list by the president of the police union, then-police chief A.J. Perez requested that the Personnel Director, David Dunn, "provide the next highest scoring lieutenants eligible to be certified for the promotion to the rank of Captain." ECF No. 28 ¶ 18. At the time of this request, there were two vacant Captain positions in the Bridgeport Police Department. *Id.* ¶ 20. Upon receiving the request for the next-highest-scoring lieutenants, Dunn initially replied that he could not "certify two (2) captains because the positions are not budgeted"; later that day, Dunn supplemented his response by providing the next two names on the list (including Plaintiff's) but reiterating that the names could not be certified because there was no funding for the positions. *Id.* ¶ 24; ECF No 29-9 at 2. Plaintiff appealed this refusal to certify his name. *Id.* ¶ 25. On April 4, 2018, the Commission, after requesting and receiving the opinion of the City Attorney, voted unanimously to certify

4

Plaintiff's name for promotion. *Id.* ¶ 28. Plaintiff was certified by the Personnel Director for a probationary appointment to the rank of Captain on April 5, 2018. *Id.* ¶ 29.

Despite being certified for the promotion to the rank of Captain, and the Charter's language mandating the promotion after certification, it is undisputed that Plaintiff has not in fact been promoted. *Id.* ¶ 31. It is further undisputed that Plaintiff has neither been provided a reason why he was never promoted nor a hearing regarding why he was not promoted. *Id.* ¶ 32. At oral argument, Plaintiff noted that the police department has not promoted anyone to the position of Captain since Plaintiff was certified for that promotion.

## II.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is the moving party's burden to show there are no disputed material facts. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by pointing out an absence of evidence to support the non-moving party's case. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002). If the moving party demonstrates there are no disputed issues of material fact, the burden shifts to the non-moving party to rebut this showing through introduction of "specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). When examining the record, "the court must resolve all ambiguities and draw all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992). Thus,

"only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

The parties here agree that this matter is suitable for resolution on summary judgment. Neither party argues that there is a genuine dispute of material fact, but both parties argue that they are entitled to judgment as a matter of law based on the undisputed facts.

### III. DISCUSSION

Where a plaintiff alleges he was deprived of a property interest without due process of law, the Court must determine: "(1) whether [the plaintiff] possessed a liberty or property interest and, if so (2) what process he was due before he could be deprived of that interest." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002). While the Constitution guarantees that property rights will not be infringed without due process of law, "property interests, of course, are not created by the Constitution. Rather they are created, and their dimensions are defined, by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). In order to have a property interest in an employment position, one must have "more than an abstract need or desire for it." *Id.* Instead, one must have "a legitimate claim of entitlement" to the position. *Id.* While underlying state law determines whether a plaintiff has a property interest in an employment position, "federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978).

The Second Circuit has opined that a constitutionally protected property interest in a promotion could arise where the promotion is "solely a function of seniority or tied to other

objective criteria," *Schwartz v. Thompson*, 497 F.2d 430, 433 (2d Cir. 1974), and has held that a plaintiff had a property interest where "policies and practices of the institution were such that an entitlement" to the promotion existed. *Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 783 (2d Cir. 1991). One other court in this district, interpreting the very Bridgeport Charter at issue here, in the context of a police department promotion, held that where a plaintiff is properly on a valid employment list and is passed over for a promotion, he or she has a constitutionally protected property interest in that position. *See Otero v. Colligan*, No. 3:99-CV-2378 (WIG), 2006 WL 1438711, at *12 (D. Conn. May 17, 2006).

In the present case, there is no dispute that Plaintiff has been provided no process concerning Bridgeport's failure to promote him to the position of Captain. The determinative question is whether Plaintiff has a constitutionally protected property interest in that promotion. For the reasons below, the Court holds that he does not.

> A. The Bridgeport Charter Does Not Grant Plaintiff a Property Interest in the Promotion

Plaintiff claims that he has a constitutionally protected right in being promoted from Lieutenant to Captain in the Bridgeport Police Department because, once his name was certified for promotion from a valid employment list, the police chief has no discretion *not* to promote him. Defendant concedes the police chief's lack of discretion, but argues that the employment list on which Plaintiff's name appeared had already expired when the police chief initially requested names for certification. According to Defendant, this renders the list invalid; as a result, Defendant argues, Plaintiff cannot have any property interest in the promotion. Plaintiff responds that the list was valid based on his reading of the Charter and the longstanding practice of the City to treat the list as valid until two years after the first promotion was made from the list. Plaintiff thus argues

that he has a constitutionally protected property interest in the promotion. The Court agrees with Defendant.

Under the Charter, a list can be in force for only two years. *See* Charter § 211(a) ("The commission shall cancel such portion of any list as has been in force for more than two years."). Accordingly, the central question the Court must decide is the date on which the promotion list at issue came in force and, based on that date, when it expired. The question of when the promotion list came into force under the Charter presents a matter of statutory interpretation under Connecticut state law. Neither the parties nor the Court have located any authority deciding the precise question at issue here. Thus, this Court must predict how Connecticut's Supreme Court would rule. *See First Invs. Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 165 (2d Cir. 1998) (where state law is "uncertain or ambiguous the job of the federal courts is carefully to predict how the highest court of the state would resolve the uncertainty or ambiguity" (internal punctuation omitted)).

When interpreting city charters, the Connecticut Supreme Court applies the standard rules of statutory construction. *Broadnax v. City of New Haven*, 851 A.2d 1113, 1132 (Conn. 2004). Thus, the Court begins with Connecticut's "plain meaning rule," codified in Conn. Gen. Stat. § 1-2z, which first requires the Court to attempt to ascertain the meaning of a statute based on the text of the statute itself and its relationship to other statutes. *See Dep't of Transp. v. White Oak Corp.*, 213 A.3d 459, 464 (Conn. 2019) ("[w]hen construing a statute, our fundamental objective is to ascertain and give effect to the apparent intent of the legislature" (internal punctuation omitted)). In "arriving at the intention of the framers of the charter the whole and every part of the instrument must be taken together and compared together. . . . In other words, effect should be given, if possible, to every section, paragraph, sentence, clause and word in the instrument and related

8

laws." *Broadnax*, 851 A.2d at 1132 (quoting *Fennell v. Hartford*, 681 A.2d 934 (1996)). Where terms in a statute (or city charter) are undefined, the Court shall give them their "commonly approved usage." *O'Shea v. Scherban*, 262 A.3d 776, 782 (Conn. 2021); Conn. Gen. Stat. § 1-1(a). If, from the text of the statute, the meaning is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence will not be considered. Conn. Gen. Stat. § 1-2z.

If, on the other hand, the meaning of the statute is not plain and unambiguous on its face, the Court will then look to "the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." *Holston v. New Haven Police Dep't*, 149 A.3d 165, 170–71 (Conn. 2016). That a statute is silent on a particular issue "does not necessarily equate to ambiguity." *State v. Ramos*, 49 A.3d 197, 204 (Conn. 2012) (quoting *Hartford/Windsor Healthcare Properties, LLC v. Hartford*, 3 A.3d 56, 61 (2010)). Rather, a statute is ambiguous if it is susceptible to more than one reasonable interpretation. *Id.*

When construing the civil service provisions of a city charter, the Connecticut Supreme Court is mindful of "maintaining the integrity of the system." *Broadnax*, 851 A.2d at 1132. Civil service laws provide "for a complete system of procedure designed to secure appointment to public positions of those whose merit and fitness has been determined by examination, and to eliminate as far as practicable the element of partisanship and personal favoritism in making appointments." *Id.* (quoting *Walker v. Jankura*, 294 A.2d 536, 540 (Conn. 1972)). Consequently, "statutory provisions regulating appointments under civil service acts are mandatory and must be complied with strictly. They may not be waived by a civil service commission and substantial compliance

9

is insufficient." *Walker*, 294 A.2d at 540.  A civil service statute is "mandatory as to every requirement." *Id.*

With these principles in mind, the Court's inquiry begins with an examination of the text of the Charter.  The relevant section of the Charter states "the commission shall cancel such portion of any list as has been in force for more than two years."  Charter § 211(a).  The main dispute in the present action is what it means for a list to be "in force," as the date that the list comes "in force" starts the clock on the two-year expiration date.

Plaintiff argues that a list comes "in force" only when the first promotion is made from the list, which the parties do not dispute happened in this case on January 14, 2016.  Thus, in Plaintiff's view, the list would have expired on January 14, 2018.  Accordingly, in Plaintiff's view, Perez's January 12, 2018, letter requesting certification of two names for the vacant Captain positions was made within the two-year "in force" window.[3]  Plaintiff believes that, when the Charter provisions are read "in harmony with one another," ECF No. 46 at 5, such a reading shows that the two-year life of a promotion list begins on the date of the first appointment from the promotion list.  Specifically, Plaintiff advocates that the promotion list comes into force when the Personnel Director initially exercises his authority under § 213(a) in response to an appointing authority's request to fill a vacant position and certifies to the appointing authority the name of the first candidate on the list.  *Id*.  Prior to that point in time, Plaintiff contends, the list cannot be used to fill positions and is therefore not "in force."  *Id*.

Defendants, on the other hand, initially argued that a list comes into force when the Commission certifies it.  *See* Defs.' Memo in Supp. of Mot. for Summ. J., ECF No. 29-1, at 1.

---

[3] The Court need not, and does not, decide whether a request for certification is sufficient to toll the expiration of an employment list.  For purposes of this motion, the Court assumes that a request for certification is enough to toll the expiration of an employment list.

10

They later abandoned this argument, conceding that it finds no support in the language of the Charter, as the Charter does not require certification of the list by the Commission at all. Instead, Defendants now argue the Charter mandates only that no promotions may be made from the list until one month after it has been posted. Charter § 211(a). This allows any candidate who believes there to have been an error in grading his or her examination the ability to appeal the score. Defendants contend that the Charter provides no other limitation on the effective date of the list, so it must be in force when the one-month appeals period expires.[4]

As mentioned above, the Charter does not define the term "in force." In the absence of a statutory definition, the Court turns to the dictionary to determine a term's commonly approved usage. *Town of Ledyard v. WMS Gaming, Inc.*, 258 A.3d 1268, 1274 (Conn. 2021). Merriam-Webster defines the term "in force" as "being in effective operation" and provides the synonyms of active, functional, and operative, among others. *In force*, Merriam-Webster's Online Thesaurus, https://www.merriam-webster.com/thesaurus/in%20force (last visited May 19, 2022). A natural reading of the Charter, therefore, is that the Commission shall cancel any portion of the list that has been in effective operation, or active, functional, or operative, for more than two years.

Using this definition, the Court finds that the only reasonable reading of the Charter is that a list is "in force" at the conclusion of the appeal period—one month from the date of the posting of the list—and without any further action required by any person or entity. One month from the date of the posting of the list, it is in effective operation and active, functional, and operative, in the sense that an appointing authority could make a request for a name from the list and receive,

---

[4] Defendant argues that the appeal period may take longer than one month because any alleged error in marking would need to be investigated. Thus, Defendant argues, it is possible that the list would not come in force until after any appeals are resolved. Because it is undisputed that no appeals were filed in this case, the Court need not address this issue, except to note that the Charter does not contain language that would toll the effective date of the list during the pendency of any appeal.

in due course, a certification of appointment. Prior to the one-month appeal period expiring, that would not be possible. *See* Charter, § 211(a) (during that one-month period, "[n]o certification of appointment shall be made."). But after the one-month period, there are no further limitations on the ability of an appointing authority to receive a name from the list. Under the Charter, no person or entity, including the Personnel Director or the Commission, is expressly required to do anything before the list becomes effective.[5] It is clear that the drafters of the Charter were aware they could insert limitations on when the list became effective, as they did for the month immediately following the creation of the list. *See Town of Ledyard*, 258 A.3d at 1275 (recognizing the "well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so"). Because the drafters decided not to institute any further delays or requirements before a list was "in force," the Court will not create any.

This interpretation does not change when the Charter is "read as a whole," as Plaintiff contends. Plaintiff points to § 213(a) as evidence that the list can only be in force after the first name has been certified. However, § 213(a) specifies what happens "when a position in the competitive division of the classified service shall become vacant and an appropriate re-employment list or employment list exists." This provision says nothing about what an appropriate employment list *is*, and instead assumes that one already exists. Additionally, the fact that the process to promote a member of the classified service is initiated at the request of the appointing authority does not bear on when an employment list is in force. Instead, § 211(a) details the

---

[5] In this manner, the Bridgeport Charter differs from that of other cities, including, for instance, New Haven. The New Haven Civil Service Rules explicitly require the Civil Service Board of the City to approve an eligible list and provide that the list is "in effect from the date on which the Board certifies the list." *City of New Haven Civil Service Rules*, Effective February 1, 2008, Rule IV, Sections 1 and 2. In this case, although the Commission certified the list on December 8, 2015, such certification was superfluous, as the Bridgeport Charter has no requirement that the Commission certify it.

12

creation of an employment list, including restrictions on when such a list may be used. Reading the Charter provisions "in harmony with one another," as Plaintiff urges, it is clear that § 213(a) addresses how promotions are made from a list already in existence, while § 211(a) specifies how and when such a list comes into existence, and subsequently in force. Thus, the Court concludes that the Charter clearly and unambiguously states that promotional lists are in force one month after they are posted, immediately upon expiration of the appeals period.

This interpretation will not lead to absurd or unworkable results. *See* Conn. Gen. Stat. § 1-2z. Rather, such a reading allows for a straightforward application that makes abundantly clear when any given promotional list is in force, and thus when the commission must "cancel" it. Charter, § 211(a). Conversely, the interpretation espoused by Plaintiff would require an action, not mandated by the Charter or any other law, before the two-year limitation began to run. As the appointing authority is never required to promote anyone (nor can they if there is no vacancy), a single employment list could be in existence for many years under Plaintiff's interpretation before the Charter's two-year time limitation would even begin running. Such a result is clearly absurd and unworkable in light of the requirement that any list in force for more than two years be cancelled.[6]

Applying the plain and unambiguous language of the Charter to this case, the Court finds that the relevant employment list was in force for more than two years before Plaintiff's name was certified. It is undisputed that the list at issue was prepared and posted by the Personnel Director

---

[6] As the meaning of the Charter is clear and unambiguous, the Court is constrained to the plain language of the statute. Conn. Gen. Stat. § 1-2z. Thus, the Court did not consider the legislative policy underlying time limitations on promotional lists. However, it is worth noting that such policy is consistent with the Court's interpretation of the Charter. See *State ex rel. Chernesky v. Civ. Serv. Comm'n of City of Bridgeport*, 106 A.2d 713, 715 (Conn. 1954) (holding "the public interest will be best served if promotions . . . are made from those who, by examination, have shown themselves to be best qualified" and that "one who could demonstrate his ability [at one time] to perform the duties of an office higher than that he then held, might, for a wide variety of reasons, be incompetent to do so a few years later." Therefore, "a limitation upon the time during which an eligibility list remains effective is in the public interest.")

on October 30, 2015. ECF No. 29-5. One month from the creation of that list was November 30, 2015. On that date, November 30, 2015, the list was "in force" or active, functional, and operational. Therefore, the list at issue expired two years later—on November 30, 2017—prior to Perez's January 2018 request for the names of the next two eligible candidates. Because Plaintiff was not certified from a valid list, the request for his name (and ultimate certification of his name) did not grant Plaintiff a cognizable property interest in the promotion to Captain.

> B. The City's Pattern or Practice of Using the List Incorrectly Does Not Grant Plaintiff a Property Interest

Plaintiff argues in the alternative that even if the list had already expired, the City's historical pattern of interpreting the list to expire two years from the date of the first promotion off the list gave him a property interest in the promotion. *See* ECF No. 33-1 at 21–22. This argument fares no better. It is true the Second Circuit has held that "the policies and practices of an institution" may be enough to give rise to a property interest. *Ezekwo*, 940 F.2d at 783. But what Plaintiff has failed to provide, and what the Court has failed to discover, is a single case where a property interest was found based on a policy or practice that was in direct violation of an existing law. In fact, perhaps unsurprisingly, just the opposite is true. One specific line of cases is especially enlightening on this topic.

First, in *New Haven Firebird Society v. Board of Fire Commissioners of the City of New Haven*, 630 A.2d 131 (Conn. Ct. App. 1993), a group of firefighters brought an action challenging the New Haven Board of Fire Commissioners' practice of "stockpiling" promotions. "Stockpiling" promotions was accomplished by the Board making numerous promotions immediately prior to the expiration of an employment list. *Id.* at 133. These promotions, however, would be "subject to assignment," meaning at the time of the promotion there was no job vacancy to fill. *Id.* Therefore, the promoted firefighters would not get the corresponding pay raise or

altered job responsibilities until there was such a vacancy. *Id.* The plaintiffs in *New Haven Firebird Society* alleged that any promotions made this way were in violation of the city charter's two-year limitation on eligibility lists and were thus null and void. *Id.* The defendants countered that even if such promotions were proscribed by the charter, the court should defer to the commissioners' longstanding interpretation of the charter to allow "stockpiling." *Id.* The court emphatically rejected the defendants' position, holding "an agency's interpretation of a rule that clearly violates the rule's intent cannot become legal merely by the passage of time." *Id.* Thus, the court found that any promotions received pursuant to the practice of "stockpiling" were invalid. *Id.* at 593.

As a result of this holding, several firefighters were demoted from their positions. These firefighters subsequently brought an action alleging that they were demoted without due process of law. *See Andreucci v. City of New Haven*, 916 F. Supp. 146 (D. Conn. 1996). In that action, the court held that "the state court decisions made clear that plaintiffs never had any legitimate claim of entitlement to their former positions under state law, as their promotions were held to be unlawful from the start." *Id.* at 148. As they never had a legitimate claim of entitlement to their promotions, there could be no protected property interest in their positions. *Id.*

These cases clearly foreclose Plaintiff's argument in the present action. Regardless of whether the City of Bridgeport has historically viewed eligibility lists to expire two years from the date of the first promotion off the list, such an interpretation finds no basis in the language of the Charter, as described above. As in *New Haven Firebird Society*, the "contention that the practice must be recognized because it has gone unchallenged for a long time is unpersuasive." 630 A.2d at 133. The policies and practices of the City, longstanding as they may be, did not give Plaintiff a property interest in his promotion because they conflict with the Charter itself. No violation of

the Charter can be countenanced. *See id.* ("It cannot be overemphasized that proper competitive examinations are the cornerstone upon which an effective civil service system is built. Any violation of the law enacted for preserving this system, therefore, is fatal because it weakens the system of competitive selection which is the basis of civil service legislation.") (internal quotation marks omitted).

## IV.     CONCLUSION

In sum, because Plaintiff did not have a constitutionally protected property interest in his promotion to Captain, the Defendants were not required to provide any due process prior to refusing to promote him and his federal due process claim cannot succeed.

For the reasons described herein, Plaintiff's Motion for Summary Judgment (ECF No. 26) is DENIED.  Defendants' Motion for Summary Judgment (ECF No. 29) is GRANTED.  The Clerk of Court is directed to enter Judgment for Defendant and close this case.

**SO ORDERED** at Hartford, Connecticut, this 27th day of May, 2022.

   /s/ Sarala V. Nagala
SARALA V. NAGALA
United States District Judge